Case No. 14-0718, Irena Schuster v. Occidental Fire & Casualty. Counsel, if you'd approach the podium, please. Counsel? Both of you, please. Sorry, thank you. Before we begin, I need to say that Justice Reyes, the third member of our panel, was unfortunately unable to attend the proceedings today, and rather than cancel and reschedule, we decided to press forward. Justice Reyes has asked us to indicate to you his apologies, and also that he will certainly listen to the recordings, and he has the briefs, and he will participate in our discussions. Would you please identify yourselves, and then we'll proceed. Good morning. I'm Michael Vasak. I'm here on behalf of the plaintiff appellant. Wendy Anderson on behalf of the defendant, Occidental Fire & Casualty Company. Thank you. So we'll start out at 15 minutes apiece, although we're known to be pretty liberal with regard to that, and you can certainly save us some time for rebuttal if you wish. Thank you. I always prefer to leave two minutes for the tail end of my presentation, Your Honor, if I could. Good morning, Your Honors. Michael Vasak. I'm here on behalf of the plaintiff appellant, Irena Schuster. This is the coverage case in which Ms. Schuster's husband died in a trucking accident. A lawsuit was brought against Diamond, among others. Diamond's insurance company, Occidental, declined coverage, declined to defend, and then filed this declaratory action to determine whether or not there was, in fact, coverage under the policy it issued to Diamond. We are really here on two separate issues, and unless the Court has a preference, I was going to address first the question of whether the policy actually provides coverage. I'll put the stopper question to the end. In that regard, we believe that the progressive case had it right. This may be the first time I've actually had to bring the document to the podium with me because I personally find it confusing. The question here is how you interpret the language with respect to these various symbols and descriptions in the policy when you compare that to the page that lists the trucks that are insured. And Occidental is correct. There are circumstances where this would be very clear, and, in fact, if one- Is there any language in the policy that references that the insurance covers leased autos? Yes. What would that be? They would be covered under Symbol 47. They call them hired autos. But does 47 occur anywhere? No, it does not. No, and that's exactly our point. And there is a place on the policy to enter leased vehicles. That's our other point. Under Item 3, there is a place where you're supposed to put in vehicles that- Are leased? That are leased. There's a very small place. It's not a long set of lines. It's a very small place for autos that you lease and use in your business and then autos that you lease and don't use in your business. And the conflict and the confusion that came up here, of course, is that they took these leased trucks and put them under the line for owned trucks. Well, how do we know that these are really leased as opposed to owned? Because the witness that drove for or owned DA Fast testified that Diamond leased its trucks. There was a question in the deposition referred to it under brief. They leased their trucks. Is that it, though? Yes, and we know this truck is a leased truck because we have the lease. All right. Let me ask you this. Nobody's quarreled with that, by the way. Nobody's quarreled. No, the quarrel is that the insurance company has argued this covers owned automobiles and you're arguing it covers leased automobiles. Now, would you agree that for purposes of summary judgment, you normally have to have competent evidence that would be admissible in a court to have a question of fact raised? Yes, that's correct. How could Mr. – I forget his name. Mr. Bennis. From DA Fast? Yes, that's correct. How could he ever testify regarding that another company leases their trucks? Pardon me. How could he ever testify? I thought about that. It would have been nice if somebody at the deposition said, how do you know that, but nobody did, and nobody's challenged the foundation for that answer. If someone had challenged the foundation for that answer, either at his deposition or in the course of the proceedings below, our trial counsel would have just gone back to him and said, how do you know that? My response would have been, who is that? The question, though, isn't whether they challenged it. The question on our review is whether there's any competent evidence to support summary judgment. And my response to that is competent so long as nobody challenges it. Just like you say, if nobody challenges it, it's competent testimony to come in. Somebody's got to challenge it. I can't say I agree with you at all. So competent evidence is not something that isn't challenged. It's whether or not that person could testify to that kind of information in court. That's what competent evidence is described as, not something that's not objected to. But the point to determine whether the court's going to consider that evidence, that's determined by whether or not somebody lets it in or doesn't let it in. For all we know, they may have had a good reason for not exploring it further. I have no idea why. It's just like sometimes you let hearsay come in because you have down the road the plan that you're going to have it. The fact that it's hearsay doesn't make it necessarily incompetent. The other point here is no, it doesn't make it. But the rule isn't really, for our review, whether we classify something as hearsay or not. It's whether there was any competent evidence to support the granting of summary judgment or denial. And in this case, I think your evidence is that this person said this. No, in this case, there was no reason to believe this man did not know they weren't leased. I mean, these are small trucking companies. For all we know, How would he know this? How would this other fellow who apparently owns some other company? Because I can describe it just from being in trucking cases. These people all talk to each other. This company has nothing but leased trucks. Which company are you talking about? I'm sorry, Diamond has nothing but leased trucks. And we know that they must be leased. Why did they have a policy then that didn't cover? Why would they sit down and negotiate premiums that doesn't cover leased trucks? And why would Occidental sell them a policy and issue those leased trucks? The other reason we know they're leased is because when you look on the form, there's a date of purchase. There's no date of purchase filled in for any of these vehicles because they're leased. So that means that that's a lease? Yes. Unless they're donated or voluntary. I don't mean to be sarcastic. I don't know. I'm not sure. Was there any claim brought in this lawsuit that they made a representation to Occidental that these are leased vehicles and that's the kind of policy we want? No, we don't. Which would be a different cause of action. Then somebody didn't do what you asked them to do. Then it would be maybe a cause of action against the broker. If I told my broker I have 15 leased trucks, I want you to cover these. Nobody got into that. As you saw from the pleadings, this case started to evolve from one step to the other during the trial of the case. And the trial court judge assumed these were leased trucks. That's why we lost. We said this was a leased truck like the other ones. And he said the policy covered owned vehicles. Right. Well, they did. But he didn't say they covered owned vehicles. It doesn't matter what he said because on our de novo review, it really doesn't matter what he said at all. It does not. On the other hand, if the trial court accepted evidence on a point, then if that's going to be turned around and someone says, well, you shouldn't have accepted or taken that point as true, then we would deserve an opportunity to go back and make that straight. But the problem that came up is when it's not Diamond that fills these out. These are insurance forms filled out by the insurance company. They listed the leased trucks as owned trucks. And the progressive case. They're listed as described autos, aren't they? Yes, specifically described autos. Specifically described autos. But they're under the section that says. I would think that they either paid for premiums for leased vehicles or they paid for premiums for owned vehicles. And they have a schedule of covered. The top of that is a schedule of covered autos you own. And underneath there are the vehicles that we say are leased. Now, why would they be putting leased autos there? That's a question that someone would have to ask accidental. They did it before. They did it in the progressive case. No, in the progressive case, there's quite a difference. Why? Because in that case, the policy actually provided for leased or owned autos. They were actually purchasing. And they paid premiums for owned and leased. I'm sorry. I would disagree with that. That's the accidental's interpretation of progressive. Well, I'm not looking at accidental's interpretation. I'm looking at the. In the progressive case. This was a trucker policy. That's correct. And it was specifically designed as any person or organization engaged in the business of transporting property buy auto for hire. This was actually a policy designed for companies that actually lease trucks and carry freight. But then when you got into what was insured, that policy did not insure every vehicle they had. It only insured. That was another policy where they only insured specifically described vehicles. Right. But they insured policies that were not only owned but also leased. And they paid premiums for leased vehicles. But in that situation, I'm sorry, the court did not say they were owned vehicles. When that court went to. Well, those were leased vehicles. That's correct. And it didn't say they were other vehicles. All the vehicles, they were owned vehicles. And the problem is that they were listed the same way they did in this case with a reference to owned vehicles, number 46. And if you. So you're saying that in this other case, progressive didn't pay premiums for leased vehicles? It does not say. It does not. To my recollection, it does not say why they paid premiums. We know they paid premiums on these vehicles. And presumably they paid vehicles on the leased. I'm sorry. They paid premiums on leased vehicles there. They wouldn't have gotten a policy. But the court did say everybody agreed in that case that all the vehicles listed were covered. See, in this case it says accidental issued a liability insurance policy to SSTS for coverage of all vehicles in service for SSTS whether owned or leased by SSTS. Correct. And that's the court's language. But then when you go on to see what that court based that language on, it was just because the parties agreed that was the case. The court was not quoting, to my knowledge, that court was not quoting language from an insurance policy. And the reason it was not is because it sounds like that policy was the same when this was. And it had the same problem in it in that they listed leased vehicles as owned vehicles. And once you mix up leased vehicles and put them on the owned line and you're the insured and you look at your policy and you've got this, assuming everybody, if somebody gets that far, you look at this after acquired vehicle designation, it's not clear where they fall. That's what Progressive said. I believe this case falls squarely under Progressive. And I'd like to switch, if I could, to the other question here. What about the other insurance clause? The other thing that the court said was that even if these were leased, the provision regarding coverage, the gap coverage, the 30 days, that in this case that specifically is limited to owned autos. Correct, exactly. And Progressive addressed that and said, no, your policy doesn't say what happens when you have a vehicle that's listed when you the policy does not say what happens when you have a leased vehicle that's listed as an owned vehicle. Like they did here and they did in that case. And they said that creates an ambiguity. So somebody reading that specific automatic insurance policy, even though it talks about owned vehicles, would say, well, this company has got leased vehicles listed as owned vehicles. They must be covered too. Wouldn't it have been a simple matter to get an affidavit from Diamond? There are so many things I wish I could do when I was standing before the court, Your Honor. I'm just not in a position to do that. Wouldn't it have been a simple matter, though, for the Diamond principal to walk in the door or prepare an affidavit in which he said, we took out a policy for leased vehicles. And not only did we take out a policy for leased vehicles, but all of our vehicles have been leased. I have to rely on inferences and a statement of the one thing. Other than the lease. Other than the one lease. Okay. Would that have been simple? It would have been. But you weren't the lawyer there. I'm not going to point the finger. The reason it didn't come up that way, if the court will recall, this summary judgment and the whole coverage issue had nothing to do with this. The motion for summary judgment, which is what the plaintiff's counsel had to address, only said that the gentleman who died and passed away was an employee. That's all it's based on. So when they started the case out, that's all that the defamation lawyer asked for. Were there cross motions for summary judgment? Yes. All right. So then Diamond, I'm sorry, no. The plaintiff. The plaintiff actually asked for summary judgment. That's correct. So at that point, would it have been a simple matter? The issue of whether or not this symbols caused a problem, and those languages with the symbols caused the problem, doesn't arise until accidental reply brief in the circuit court, reply memo in the circuit court. And that explains why when they did the initial discovery, if you will, in this case, what we're talking about here wasn't even an issue. It only came up later on. Was there any other lease in the record? I mean, was there any other evidence to support this idea that the trucks were leased? Other than the lease that was created the day before the accident. Right. So other than that. And the truck that this truck substituted for, I believe, was also a leased truck. Well, I don't think there's anything in the record that added to you. There's a – it's cited in my brief, in the main brief, there's a citation to the page about the – because we identified the truck was this lease that this substituted for, and we pointed out that that truck was not included in the original list. So that truck for which our truck was substituted was, in fact, also a substituted truck. Yeah, but the policy provided for substituting. It provided that you can substitute another auto for a covered auto. Right. But there's nothing in the record that I don't think you pointed to us that suggests there was any other lease that we could look to. Other than what I've expressed to you, Your Honor. The inferences that I've asked the court to draw. Your position at the outset was that everybody agrees that all these cars are leased. That's it. That's not an issue. But here's my question. So if everybody agrees that the cars are leased and the policy says owned. Correct. Okay? So you've got all the cars are leased and the policy says owned. So what is your legal theory that we should ignore the word owned? Are you trying to reform the contract? Or what's your legal theory for us to ignore that? Is it an estoppel? What is it? Our theory is the same as in the progressive case, that the policy is ambiguous because they put the leased trucks under the owned, under the space for owned trucks, so that someone looking at the policy would say I have leased trucks, but apparently this insurance company is treating them as owned trucks. And once I look at that, then everything falls into place. I'm going to think that I have the same coverage for leased trucks as I did for owned trucks because the insurance company is treating them the same way. That, as I understand it, is the gist of progressive. And so if the policy is ambiguous and we have to construe the ambiguity in favor of the insured, we are supposed to determine then that owned really means everything that was listed? For this policy, yes. That's the answer. That follows from my analysis. I don't know. We've got the policy. There weren't any other trucks here. I mean, I presume, I think we can safely presume when they attached the policy documents, they gave us everything to have. They weren't parsing their policy into different policies. Nobody suggested that. Once the other side moves for summary judgment, you have to come back with some competent evidence to support your position, don't you?  But the only thing that we had to compose at that time was whether or not he was an employee. That's the only issue that was on summary judgment. So the cross motions for summary judgment were on the employee. How does the court, the trial court, jump to this other thing? Because it came up. You mean it's sui sponte? No, it did not. That was this one. That one, the point about the symbols, that came up in Occidental's reply, at the tail end of the reply. So it was in the summary judgment motion but not until the end, which is why we never. So no one moved for summary judgment on a theory that the vehicles were not owned or not covered? That's a fair way of putting it. I can't quarrel with that. As I prepared for argument, I sort of came to that result. I'm sorry. You looked like you were going to ask me a question. That's very intriguing, but I just didn't want to add anything. And I understand. You didn't get a chance to come back and say, hey, I want to file this reply now. I understand there's a ton of time constraints. It wasn't you, but, you know. No. You take as much time as you want. Well, that's generous of the court. I appreciate it. The other question, of course, is whether we even need to get that far because the Occidental refused to defend and did not defend under reservation rights and did not file the D.J. Well, before you get to the estoppel, would you agree that if we interpret this policy as one that covered owned autos because there's no mention of leasing or hiring or anything like the policy in progressive, that then you would not have coverage? No, I would not, Your Honor. And that's Occidental's position that when you look at ELCO, they say ELCO lets an insurance company walk away from their insured if they're right about the policy language. And our position here is, and I believe Murphy and ELCO itself support the fact, that an insurance company cannot walk away except in very limited circumstances. If you have to start looking at the policy and determine what it means, they need to do a D.J. or they need to defend under reservation rights. If there's no policy, they can walk away. That's what ELCO says. ELCO's got three examples. You can walk away if there's no policy, you can walk away if nobody tendered it to you, and you can walk away if you can look at the complaint and the policy and see there could never be any coverage. ELCO specifically says that. It's got the broad language that my opposing counsel picked out of there, but then it goes into three points. And ELCO, in fact, found waiver, found estoppel. They didn't look the other way. And if you go back to the cases, if you go back to Murphy, Murphy says you do two things. D.J., reservation of rights with the defense. You don't have an alternative. So our position is here. In this case, didn't the complaint allege that he was an employee? It alleged he was an employee or an agent, employee slash agent. And it became clear, as I think of it, that's what the trial court found. It's a question of whether or not he was an employee. If he's an employee, then the workers' comp exclusive remedy provision applies. If he's not an employee, which is our position in that part of the case. Where's the coverage if he is an employee? If he is employed, then he would be only, his only benefits, his family's only benefits would be under workers' compensation. And if he is, what's the other one? Agent. If he's an agent, then the workers' comp exclusion does not apply, because the workers' comp exclusion only applies to employees. And there's a question, the circuit court found there was a question of fact about whether he was an employee or a leased employee or a temporary employee. So that issue. But did you appeal the? We won that. We won that. That's. Well, all right. Yeah, the question of fact. But we never got to try that point, because the court kicked us out on the other grounds. The ownership. On the ownership grounds, exactly. But starting at the outset, when they make the determination about whether or not they're on the hook for duty to defend, the complaint says, he's an employee, and they're at fault because they didn't get workers' comp insurance. That was half of it. What's the other half? The other half, the circuit court said, that was the first two counts. The other two counts were common law negligence counts for not having a truck that was in good shape. They said, basically, he's an agent, and they gave him a truck that wasn't in safe condition. And that led to the accident, the one-car accident. Didn't all the counts allege he was an employee? They all say employee slash agent. And the circuit court understood that. The circuit court found we have a question of fact about whether he was an employee. We won that. And I can't say that too much. That's gone. So that part of the case is something that awaits trial, if we can get it back down. To go back to the duty to defend question, which is, you know, it's a cynical thing. If there's a question of fact, because there isn't any dispute that they don't have an obligation to have workers' comp insurance, right? No. That part of the case was removed by the circuit court. So if there's a question of fact and he might be an agent, then you're claiming that therefore there's a possible negligence claim. Correct. Then what's the reason why there's no duty to defend? By looking at the policy. I'm asking you to take, you know, what's their position there? I'll ask them. Okay. I almost stumbled. I'm sorry. No, no. You can almost hear it. Somebody once said you can almost hear my brain grinding when I get a question that I didn't see coming. If, in fact, if you look at the policy and you say if he's an employee, and we're the insurance company, if Zach Occidental looks at the complaint and looks at the policy, he's an employee, we win. But if he's an agent, we have a coverage issue. That's our point. There's no defense to that. That's why you file a D.J. or defend under a reservation of rights. The whole policy issue is not to leave somebody like Diamond hanging. They're supposed to get this resolved early on. If they did, then we wouldn't be here with a $4 million default judgment. They would have jumped into the picture, won or lost the case, and we wouldn't be here. But in the end, the law also says in the end if they're right, you know what I mean? There's that saying that estoppel doesn't create coverage. It just loses defenses. So if there's no coverage, then it doesn't matter that they didn't come forward, right? And if that's correct and that's Occidental's position, then the line of cases that the Supreme Court has always come down with, Murphy and Elko and Outboard Marine, and I think almost everybody's agreed, say you have to do one or the other. And the only exceptions are the three I gave to the court. Otherwise, the rule that the Supreme Court laid down that you have to do a D.J. or defend under a reservation of rights is meaningless because this court would then be interpreting Murphy and Elko to say, if you don't do the right thing and it turns out you were right, you're okay, then there's no penalty. And the courts always talked about this as being a penalty for the carrier to push them to get this coverage issue resolved before the underlying case is resolved. It would gut the holding of all those cases. That's my position. We may be back in the Supreme Court, depending on what this court does, because they do have what I would call sloppy language in Elko, Elko in the middle of the opinion. Well, the language is if the insurer fails to take either step. Correct. And, there's always that and, is later found to have wrongfully denied coverage. Then the estoppel doctrine may be applied. That's correct. That is the language. But if you go back to Murphy, it doesn't have the and. And if you look at Elko Green, it doesn't have the and. I believe this is the only case that has the and. And if you continue on in that, it says, after it says and, if these other things are okay, you get a pass. It lists three things. So, it's the old argument, if you have a general statement, and you follow it up with three specific items, I think the court had only those three specific items up in mind. And maybe some other items. I think there's a lot of case law out there that interprets employers exactly like this. That this other ingredient is important. They use the language, but nobody has discussed it. It's there. They quote it. It's quoted over and over, but nobody's analyzed it. Well, maybe you're right. Maybe this case will go up a couple more floors. And if it is, I would. Because there is that language floating around that says that estoppel doesn't create coverage. I agree. I can't argue with that. I know that language is there. I would just ask this court. And I've always kind of read that to mean that there's a distinction between finding no coverage versus having coverage defenses or exclusions. And so that's how I kind of reconciled that. I don't know if you would agree with that. I would have a broader reading of that. I think the court meant to doom all the defenses except the three that it set out in ELCO. If they listed three, I think they meant those three or things just like that. I think that's not an unreasonable way to look at ELCO. I can't say the other way is wrong. I would just ask if we're going to go to the Supreme Court that I get to go to the appellee, which would require this court to reverse. Thank you. Very good. Thank you. Wendy Anderson on behalf of Defendant Occidental. Your Honors, the trial court properly granted summary judgment in favor of Occidental. My opposing counsel spent quite a bit of time trying to align the facts of this case with Progressive, the First District's ruling in Progressive. And there are two critical distinctions between the Progressive case and the facts at issue here. First, it was undisputed in Progressive that the insured there, SSTS, sought coverage, liability coverage, under three symbols of the policy. I'm referencing the Occidental's brief that was filed in this court. And the citations to the record at 1154 in that case were that SSTS sought coverage for symbols 46, 47, and 50. Now, 47 addressed coverage for leased autos. 46 addresses coverage for specifically described vehicles that were owned by the insured. Now, that is the only coverage that was sought by Diamond in this case. So the trial court correctly held that here the only... Is there something going on here that we don't get? I want to know, what is your position? Now, did this insurance company cover leased vehicles? Or was this a policy set out to cover owned vehicles? This policy was only set out to cover owned vehicles. It is clear from the declarations page of the policy that it only provides coverage for those vehicles listed under symbol 46. Symbol 46 is for scheduled autos owned by the insured. But what about this whole idea that this policy was for leased vehicles and that Diamond leased all of its vehicles? The only reference in the record that Diamond leased vehicles was by the owner of DA Fast. And in that testimony, before he said that Diamond leased the vehicles, he was actually referring to the two vehicles that DA Fast leased to Diamond. His testimony first... What vehicles are those? The 1997 Isuzu truck, as well as, I think it was like a Mitsubishi truck that he owned. Who? DA Fast. So DA Fast had an exclusive relationship with Diamond whereby DA Fast would haul freight exclusively for Diamond. Yes. And DA Fast actually was insured by Great West. Yes, we know that too. Yes. Now... Was that a policy for owned vehicles? I actually do not know the coverages under that policy. But what I do know, and what is very clear, and there's no ambiguity whatsoever in the Occidental policy, is that this policy only provided coverage for owned vehicles. Well, counsel just told us that the ambiguity is created by the fact that under the section that says vehicles you own, it lists all these vehicles that now everybody says are leased. And that's the ambiguity, according to counsel. I think the only... We only have counsel's representations that these are leased vehicles. There is no credible summary judgment evidence in this record that Diamond sought to insure its leased vehicles under Item 3. What's that? Go ahead. The only time that Diamond sought to add a leased vehicle to this policy was after an accident occurred, a fatal injury, where it allowed a driver to drive a vehicle uninsured. And then after that accident occurred, it notified Occidental that it sought to add the truck to the policy. Well, I thought that truck was insured by West. Yes, it was, but West also denied coverage, and a claim was filed against Diamond. And so at that point, Diamond realized... Why did West deny coverage? I believe that West denied coverage because Mr. Baranofsky was not an insured driver under the policy. So there was no coverage under the West policy? For Mr. Baranofsky, the deceased, that's correct. You mentioned one thing. You said that there's another lease, you believe. There was another leased truck between Diamond and DA. Is that right? According to Mr. Benouncey's testimony, correct. And what was that? What vehicle is that? A Mitsubishi truck. Was that the one that was substituted for a previously owned vehicle? No, it's not. Oh, all right. Now, I'd like to come back to a point that I started with, and that's the second critical distinction between the progressive case and the facts here. The progressive court held that based on the fact that the insured there sought coverage for owned and leased vehicles under Symbols 46 and 47, and because the automatic insurance provision didn't address 47, it found some sort of ambiguity there. And it then looked at the automatic insurance provision. Let me ask you this. Go ahead. I'm sorry. The automatic insurance provision does not operate to create coverage here, and here's why. There are two conditions which must be met. First, Diamond must acquire the vehicle to replace a previously owned one, and second, Diamond must notify Occidental within 30 days. Here it is undisputed that Diamond did not notify Occidental within 30 days. According to the record, they had a lease that was entered into the day before the exit. So when they notified progressive, they only had the vehicle for a day. That's actually not accurate, Your Honor. The undisputed, uncontroverted evidence in the record is as follows. One, plaintiff swore in her answers to interrogatories, to defendants' second set of interrogatories, and I'll provide the record citation, that Mr. Baranowski drove a truck leased by Diamond, and this is a quote, drove a truck leased by Diamond from DA Fast, and this arrangement was in place from August 1st, 2005 to September 8th. But the lease wasn't in effect at that time. It doesn't matter when the lease was in effect. Why doesn't it, because the policy relates to acquiring a vehicle, and Diamond didn't acquire the vehicle until September 7th, so they would have 30 days within which to notify. The United States Supreme Court has defined the term acquire to mean to come into control or possession of something. That is the Huddleston v. United States, 415 U.S., I'm sorry, 814 U.S., 1974. Webster, likewise, defines acquire to mean to get something, to come to have something. Here we have summary judgment evidence that Diamond used this truck from DA Fast as early as August 1, 2005. That's plaintiff sworn interrogatory answers. We also have the driver's manifest logs, which were submitted from DA Fast to Diamond. Those are in the record. Now let me ask you about this whole idea about what this policy was supposed to cover. Now if a company such as Diamond has a whole fleet, 24 trucks, that it leases and then transports whatever for customers, wouldn't that be the first thing that they would make sure that their insurance would cover? Absolutely. And wouldn't they have to pay a premium for that? Yes, they would. And an insured has a duty to read and know the terms of their policy. This is a renewal policy. Diamond knew exactly what it was purchasing. It was only paying premium for owned vehicles. And there is no evidence in this record whatsoever that the scheduled list of autos were not owned by Diamond. The only controversy here is this 1997 Isuzu truck. We know that was not owned. We know that was leased. It is a leased vehicle, so it does not fall within the coverage under the policy. It is not a covered auto. The other argument that we raised in the court below, and I'd like to take a step back here and just talk about the procedural posture. Occidental did move for summary judgment on the grounds that the vehicle was not covered. We filed a supplemental memorandum of law in support of our motion for summary judgment. Plaintiff then responded to that supplemental memorandum. But before doing so, we submitted the affidavit, the uncontroverted affidavit of Stan Freaks, that is Occidental's insurance agent. Plaintiff deposed Mr. Freaks. Plaintiff took other discovery. Plaintiff could not refute the fact that this policy was only designed to cover owned vehicles, nor could they dispute the fact that Diamond sought to add the policy after the accident occurred. Is there language in the policy, this one, as opposed to the policy in the progressive case already decided? Is there any language in this policy that talks about hired, leased autos? Yes. This policy has various symbol designations which describe which vehicles are covered. Well, in this one, all the automobiles are described under automobiles you own. But you first have to look at the declarations page. The declarations page is in the record at 368. And that says for liability coverage, we covered those vehicles under symbol 46. 46 is described as only those specifically described autos under item 3. If you look at item 3, the schedule of covered autos, that's in the record at 375. It is only those covered autos you own. Now, if they wanted to insure for leased vehicles, they could have sought coverage under symbol 47. But all the symbols are 46. Correct. Because they only sought coverage, they only paid premium for owned vehicles. So this policy could have covered leased autos. That is correct. But they chose not to insure their vehicle. They chose not to seek that coverage. But even if, you know, our position is that this is not a covered auto because it wasn't owned. But it's also not a covered auto because even if it's owned, even if the court somehow finds some sort of ambiguity, it doesn't fall within the automatic insurance provision. I mean, it's undisputed they used this vehicle. Did the other progressive case say it fell under the other insurance provision because it was ambiguous? No. The reason why the progressive case held that the automatic insurance provision applied is because there they first used the vehicle in question on May 12, 2004, and they notified progressive on June 8th. That was within a 30-day window. Here, Diamond didn't do that. Diamond started using this truck on August 1st. Well, if that's what you're hanging your hat on, I don't know how persuasive that is, the dates here. The policy expressly requires Diamond, it's a condition proceeding to coverage, that you notify them within 30 days. They didn't notify them within 30 days. You're saying that the other progressive case is different because they notified them in the 30 days. That's correct. They complied with the condition proceeding to coverage. We wouldn't have that same holding here because they used the auto in August. They acquired it in August. Yes, two critical decisions. What about the provision that says you have to own it? You have to own it. And that's our first argument, Your Honor. Our first argument is they didn't own it. The second argument is that they failed to comply with the policy's conditions. Illinois courts routinely require insurers to comply with condition proceedings in order for coverage to apply. The other argument that we raised in the court below is that the no-loss doctrine prevents or operates to bar coverage for the plaintiff's claims. I mean, inherent in every insurance policy is a fortuity requirement. Let the loss be unknown. And here, the loss was known. It was after this fatal accident that Dimon realized, oops, we failed to have coverage for this vehicle. Well, that's a little too late. And as a matter of public policy, we do not allow insurers to seek insurance coverage for losses which have already occurred. Now, with respect to the estoppel argument, I believe Illinois law is very clear that the estoppel finding is only warranted once there has been a judicial determination that an insurer has breached its duty to defend. I mean, that language is very clear in Elko. Here, our circuit court ruled that there was no breach. Lastly, it wasn't addressed by counsel in his opening argument, but it's in our briefs, in that there could be no waiver for Occidental to raise this issue that the auto wasn't covered. I have one last question for you. Does this policy, the one in front of us, does this have in it the following are insureds, you for any covered auto, and then it goes down, the owner or anyone else from whom you hire or borrow a covered auto that is not a trailer while the covered auto is being used exclusively in your business as a trucker and is being used pursuant to operating rights granted to you by a public authority? Yes, it does. All right. How do you look at the, as far as the duty to defend aspect of this, how do you look at the policy and the complaint and determine that there's no coverage? Coverage was denied on two grounds, and Occidental reserved its right to raise additional grounds, the workers' comp exclusion in the policy as well as the employee exclusion. Here, regardless of the causes of action, the allegations of the complaint were that Diamond owed a duty to provide Mr. Baranofsky workers' compensation insurance, that Diamond breached that duty because it didn't. We briefed that in the court below. The circuit court correctly held that the workers' compensation exclusion in the policy barred coverage for the claims. Well, Counsel just told us that there was an additional claim in the complaint. Is that not the case? There were four causes of action, and all of those causes of action contained the same allegations, the one that Diamond was an employer subject to the Illinois Workers' Compensation Act. Okay. What about the agent language? How does that take him out of policy? Well, the Illinois Workers' Compensation Act covers employees. What does agent mean? It covers employees, but the act defines employee to include any person in the service of another under any contract of hire, either expressed or implied, oral or written, 820-ILCS-3051-B2. Illinois courts have long held that you cannot convert a general liability policy into a workers' compensation policy simply because the employer failed to do so. So the act is broadly construed to include agent within its parameters. Right, but if he's not an agent, if he isn't working for Diamond, why isn't he covered? But he was acting for Diamond. He was hauling freight for Diamond, and that is when the accident occurred. He was hauling freight on September 8th across the country on I-65. So does the workers' comp exclusion cover independent contractors? Yes, it does. So you're saying the workers' comp exclusion takes him completely out of the coverage of this policy? Yes. But the court concluded there was a question of fact as to whether he was an employee or not. That's correct, because the Occidental raised two specific policy provisions in its denial letter, the workers' comp exclusion and the employee exclusion. And the court did find a question of fact as to whether he was an employee, which precluded a ruling. Well, what does the employee exclusion say? The employee exclusion says that any person acting within, any employee acting either within the course of their employment duties or while they're in the employee of the employer. All right, so that's your alternate is that he would be out under the workers' comp exclusion or he's out because of this employee definition. That is correct. All right. And the circuit court found that there was no coverage under the workers' comp exclusion. Anything else, counsel? No. And if the court doesn't have any other questions, we respectfully ask that you affirm the circuit court's ruling. Thank you. Thank you, counsel. I will be very brief. The question asked of the gentleman who owned D.A. Fast was did they own any of their own trucks or just lease them? They just leased those trucks. It was a broad question. The answer to broadly, a diamond leases its trucks. The other point is simply that the trial court found there's a question of fact as to whether this gentleman was an employee or not. So that whole part of the defense, that whole part of their argument that they did not have to cover him, that disappeared. So we're back to the question of whether or not this policy is ambiguous because somebody at Occidental put leased trucks as owned trucks, and there is no place in the policy that lets you then reason further. That makes the rest of the policy ambiguous, and that's what Progressive found. The other question, of course, is the coverage question, and we've explored that at length, unless the court has some further questions for me at this point. I have exhausted my armament. Thank you, counsel. Thank you. All right, well, on behalf of the court, let me say that we are appreciative of your arguments today and of the excellent briefing. It's an interesting situation, and we'll take it under advisement. Thank you very much.